IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMONA LOUISE DEHART, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO., 4:18-CV-03330 |
| | § | |
| ANDREW SAUL,[1] COMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Magistrate Judge[2] in this Social Security appeal is Defendant's Cross Motion for Summary Judgment (Document No. 13), Brief in Support in Cross Motion (Document No. 14), Plaintiff's Cross Motion for Summary Judgment (Document No 15), Brief in Support of Cross Motion (Document No. 16), Defendant's Reply to Plaintiff's Cross Motion for Summary Judgment (Document No. 17), and Plaintiff's Response to Defendant's Cross Motion for Summary Judgment. After considering the Cross Motions for Summary Judgment, the parties briefing, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 13) is GRANTED and the Plaintiff's Motion for Summary Judgment (Document No. 15) is DENIED.

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Fed. R. Civ. P. 25(d), Andrew Sault is substituted for Nancy Berryhill as the defendant in the instant action.
[2] The parties consented to proceed before the Magistrate Judge on December 18, 2018. Document No. 10.

1

### A. Procedural History

Plaintiff, Ramona Louise Dehart (hereinafter "Dehart"), filed applications for Supplemental Security income benefits alleging disability due to bipolar disorder, depression, and back and neck problems. (Tr. at 64, 76; Document No. 16 at 1). The claim was denied on August 7, 2015 and again upon reconsideration on November 20, 2015. (Tr. at 63). Dehart had a hearing in front of the Administrative Law Judge ("ALJ") D'Lisa Simmons on July 7, 2017. (Tr. 32-62). The ALJ issued an unfavorable decision on October 3, 2017, finding that Dehart was not disabled within the meaning of the Social Security Act. (Tr. 15-25).

### B. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014). A "genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549 (5th Cir. 2012). The moving party "has the burden of establishing that there is no genuine dispute of material fact." *Id.* at 550. To avoid summary judgment, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Id.* at 550. The non-moving party may "defeat the motion by showing a genuine dispute of material fact." *Johnston v. City of Houston*, 14 F.3d 1156, 1060 (5th Cir. 1994). "'[A]ll facts and evidence must be taken in the light most favorable to the non-movant.'" *Walker v. Blanchard Ref. Co., LLC*, No. 3:17-CV-391, 2019 WL 4054044, *2 (S.D. Tex., Aug. 28, 2019) (quoting *Davis-Lynch, Inc.*, 667 F.3d at 549-50).

## C. Burden of Proof for Entitlement to Social Security Benefits

A disability is found when one is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expect to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A); *see also Graves v. Colvin*, 837 F. 3d 589, 592 (5th Cir. 2016). The ALJ uses "a five-step sequential process to evaluate claims of disability." The five steps include:

> (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work in the national economy.

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *see also* 42 U.S.C. § 423 (d)(2)(A). The burden of proof lies with the claimant to establish the first four steps and then "shifts to the Commissioner for the fifth step." *Id.* A "finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

Under the first step, "substantial" activity means, "work activity that involves doing significant physical or mental activities" and "gainful" activity is "work that you do for pay or profit." 20 C.F.R. § 416.972. If an ALJ finds that an individual is working and engaged in such substantial gainful activity, a disability will not be found, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). In the second step, a "severe" impairment is one that significantly limits the individual's physical or mental ability to do basic work activities. C.F.R. § 416.920. The Fifth Circuit Court has held that "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age,

education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000). This step requires the claimant to make a *de minimus* showing. *Id.* If the ALJ finds that the claimant does not have a disability, either physical or mental, that significantly limits their ability to do basic work activities, then the claimant does not have a severe impairment, and therefore is not disabled. 20 C.F.R. § 416.920(c).

Step three requires allows for the finding of a disability if the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations. This means that if an impairment is met as one of the listed, the ALJ will find the claimant disabled "without considering [their] age, education, and work experience." 20 C.F.R. § 416.920(d). If the claimant's impairment does not meet or equal a listed impairment, then the ALJ "will assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the] case record . . . ." *Id.* The fourth step requires the ALJ to determine whether the claimant can perform their past relevant work, using the residual functional capacity ("RFC") assessment.[3] 20 C.F.R. § 416.920(e). If an individual is "capable of performing the work he has done in the past, a finding of "not disabled" must be made." *Wren*, 924 F.2d at 125. If the claimant meets her burden for the first four steps, then the burden shifts to the ALJ for the fifth step in which the ALJ considers the claimants RFC, age, education, and work experience, to determine whether the claimant may do other worth "existing in the national economy." 20 C.F.R. § 416.920(a)(4)(v).

### D. Judicial Review

The "federal courts review the Commissioner's denial of social security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the

---

[3] The RFC is "the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). In determining the RFC, the [ALJ] must consider all of a claimant's impairments, including those that are not severe. *Id.*

4

commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard is "more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). The evidence is not reweighed or substituted for the reviewing court's judgment in review. *Id.* If "the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Newton*, 209 F.3d at 452. This court "will not re-weigh the evidence, try the questions de novo, or substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Conflicts in the evidence are for the Commissioner to resolve, not the courts." *Id.* A "finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings supports the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

To determine whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) claimants' subjective evidence of pain and disability; and (4) claimants age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

### E. Objective Medical Evidence

Dr. Miguel Morales, M.D., ordered an MRI of the lumbar spine, without contrast, dated August 27, 2011. (Ex. 1F at 288). The MRI results showed the following findings:

> the numbering schema assumes 5 lumbar type vertebral bodies and is saved in the PACS system for purposes. Vertebral bodies maintain height and alignment. Small T1 and T2 hyperintense lesions are seen in the L4, L5, and T12 vertebral bodies, likely small hemangiomas. No focal worrisome marrow lesion is seen. No

mild disc desiccation L4-L5 and L5-S1. Facet joint alignment anatomic. Conus terminates at L1 and is unremarkable. No findings of arachnoiditis. L1-L2- No foraminal narrowing or canal stenosis. L2-L3- No foraminal narrowing or canal stenosis. L3-L4- No canal stenosis is present on examination. There is a far left foraminal/extraforaminal disc extrusion measuring 7 mm AP and approximately 10 mm at its base. This may indent upon the exiting left L3 nerve root. Moderate left foraminal narrowing is noted. L4-L5- Mild concentric disc bulge. Small posterior annular tear. Moderate facet arthropathy. No significant canal stenosis. Mild bilateral foraminal narrowing. L5-S1- Concentric disc bulge. Moderate facet arthropathy. No significant canal stenosis. Mild bilateral foraminal narrowing is seen. IMPRESSION- Degenerative changes most significant at L3-L4 through L5-S1 as detailed above. No significant canal stenosis at any level. Disc extrusion at L3-L4.

(Ex. 1F at 291-92). Dehart also visited with Yamakawa Tatsuo, M.D., who conducted diagnostic radiography on April 23, 2012. Dr. Tatsuo found that "[t]he vertebral bodies are within normal alignment. The disc spaces are maintained. No compression or displaced fractures are seen. The prevertebral soft tissues are unremarkable." (Ex. 1F at 300). His impression was that "[n]o acute cervical spine abnormalities are visualized. *Id.*

Dehart went to the emergency room at Memorial Hermann Hospital on April 22, 2013 due to a motor vehicle accident from the previous day. (Tr. 294). She complained of pain in her chest, abdomen, and neck. (Tr. 313). The treatment shows that she exhibited moderate vertebral tenderness in the mid cervical spine and anterior chest. (Tr. 313). She also had tenderness in the abdomen and mild vertebral tenderness in the thoracic and lumbar spine region. (Tr. 314).

On November 11, 2014, Dehart began treatment with Michael J. Barber, M.D. Dehart reported a history of depression, mood symptoms, and stated she was bipolar. (Tr. 387). She described feelings of depression, irritability, and anger that lasted weeks at a time. (Tr. 387). When depressed, Dehart reported that she had low appetite, insomnia, low energy and motivation, and low concentration. (Tr. 387). She also reported episodes of elevated mood for up to two weeks and other symptoms including racing thoughts, increased talking, decreased need

6

for sleep, impulsive risky behavior, and paranoia. (Tr. 387). On examination, her mood was depressed and anxious, and her affect was blunted. (Tr. 388). Based on his clinical examination findings, Dr. Barber tapered off Dehart's dosage of [Effexor] and replaced with Lamictal. (Tr. 389). She was also instructed to cut back and stop benzodiazepines and opiates prescribed by other providers. (Tr. 389).

Dehart visited with Dr. Barber on December 11, 2014, reporting that her medication changes had helped decrease her depression. (Tr. 384). She had no suicidal thoughts. (Tr. 384). On examination, Dr. Barber noted that Dehart's mood was less depressed and her affect was blunted. (Tr. 384). Dr. Barber increased the dosage of Lamictal. (Tr. 385). On January 28, 2015, Dehart reported that she was not doing well. (Tr. 381). She felt more depressed, and sleep and appetite had decreased. (Tr. 381). On examination, Dr. Barber's progress notes confirm that Dehart's speech was soft, mood was depressed, and affect was blunted. (Tr. 381). Dr. Barber increased the dosage of Lamictal was increased and added Abilify and Lunesta. (Tr. 382).

Dehart began treatment with pain management specialist Cheor Kim, M.D., on March 4, 2015. (Tr. 511). She complained of chronic throbbing sharp lower back pain radiating into her legs, pain in her neck and shoulders, and severe pain in her tailbone. (Tr. 511). She also complained of a tingling sensation associated with the pain and that her pain was aggravated by bending forward, standing, sitting, lifting, walking, and the cold. (Tr. 511). On examination, Dehart had wheezing on inspiration and expiration, bowel sounds were remote, and she had an unsteady and antalgic gait with positive Rhomberg test. (Tr. 512). Dr. Kim prescribed Indomethacin ER, Lyrica, Methadone, Hydrocodone, and Lidoderm patches. (Tr. 512-13). On March 31, 2015, Dehart followed up with Dr. Kim, who again noted an antalgic and unsteady

gait with positive Rhomberg. (Tr. 509). The Lyrica was increased from 100mg to 150mg. (Tr. 510).

Dehart had a follow up mental health treatment with Gwendolyn R. Dejean, PMHNP, on April 6, 2015. (Tr. 365). She reported that she was doing well, she had lost weight, and her mood was stable. (Tr. 365). She complained of mild irritability/agitation, that it was much improved. (Tr. 365). The results of the medical examination were normal, and her medications were continued. (Tr. 366).

On April 30, 2015, Dehart had a follow up appointment with Dr. Kim and she complained of back and neck radiating into her legs and shoulders. (Tr. 505). Dr. Kim's findings on examination were unchanged. (Tr. 506). Lidoderm patches were discontinued and capsaicin cream was prescribed. (Tr. 507). Dr. Kim ordered lumbar and cervical spinal X-rays and a MRI. (Tr. 506). At Dehart's subsequent visit, on June 4, 2015, Dr. Kim noted wheezing, remote bowel sounds, and an antalgic and that she had unsteady gait with positive Rhomberg. (Tr. 503). Medications were continued. (Tr. 504).

At Dehart's appointment a month later, Dr Kim's examination findings remained unchanged. (Tr. 500). Hydrocodone was replaced with Oxycodone, Lyrica was discontinued, and Subsys sublingual spray was prescribed. (Tr. 501). On August 4, 2015, Dehart returned to Dr. Kim, reporting pain and tingling symptoms. (Tr. 496). Dr. Kim noted that Dehart had an antalgic and unsteady gait with positive Rhomberg. (Tr. 497). Subsys sublingual spray was discontinued. (Tr. 498).

On September 8, 2015, Dehart had a mental health follow-up with Dr. Barber. She said that everything was okay. (Tr. 362). For example, her family had been giving her positive feedback, and she was sleeping better with Ambien. (Tr. 362). On examination, her affect was

8

blunted. (Tr. 362). Dr. Barber diagnosed Dehart with bipolar depression, and her medications were continued. (Tr. 363). On September 11, 2015, Dehart followed up with Dr. Kim for treatment of her pain. (Tr. 493). On examination, she had an unsteady and antalgic gait, Rhomberg was positive, wheezing was present on inspiration and expiration, and bowel sounds were remote. (Tr. 494). Subsys sublingual spray was restarted and other medications were continued. (Tr. 495).

On October 13, 2015, Dr. Kim ordered X-rays and a new MRI of the lumbar spine. (Tr. 491). Subsys sublingual spray was increased from 600 mcg to 800 mcg. (Tr. 491). Dehart requested medication refills on November 18, 2015. (Tr. 487). On examination, Dr. Kim noted wheezing on inspiration and expiration, remote bowel sounds were present, her gait was unsteady and antalgic, and Rhomberg was positive. (Tr. 488). Dehart was prescribed Lyrica, Neurontin, and lidocaine cream, and other medications were continued. (Tr. 489). On December 18, 2015, Dehart returned to Dr. Kim, where she reported the same symptoms, and the same findings on examination were noted. (Tr. 484-86). Her medications were continued. (Tr. 486).

Dehart was seen by Dr. Kim on January 18, 2016, for pain medication refills. (Tr. 481). Dr. Kim noted inspiratory and expiratory wheezing, remote bowel sounds, an antalgic and unsteady gait, and positive Rhomberg on examination. (Tr. 482). Lyrica and lidocaine cream were discontinued. (Tr. 483). On February 18, 2016, Dehart continued to complain of the same pain at an appointment with Dr. Kim. (T 478). The progress note results were the same as the previous examinations. (Tr. 479). Oxycodone was lowered to 20 milligrams, and other medications were continued. (Tr. 483). On March 18, 2016, Dehart returned to Dr. Kim for pain management. (Tr. 475). Examination findings remained unchanged. (Tr. 476-77). Oxycodone was replaced with Hydrocodone, and other medications were continued. (Tr. 480). Dehart

followed up with Dr. Kim on April 20, 2016, continuing to complain of radiating back and neck pain. (Tr. 472). Findings on examination were unchanged and her medications were continued, except capsaicin was discontinued. (Tr. 473-74).

Dehart was treated by Brenda Schiavone, PMHNP (cosigned by Dr. Barber), on May 4, 2016. Dehart reported that she was doing well overall. (Tr. 416). Her mental status examination was normal, and her medications were continued. (Tr. 417-18). On May 20, 2016, Dr. Kim treated Dehart for back pain. (Tr. 469). On examination, he noted inspiratory and expiratory wheezing, remote bowel sounds, an antalgic and unsteady gait, and positive Rhomberg. (Tr. 470-71). Her medications were continued. (Tr. 471).

On June 22, 2016, Dehart had a routine follow-up appointment with Dr. Kim. (Tr. 466). On examination, Dr. Kim again noted inspiratory and expiratory wheezing, remote bowel sounds, an antalgic and unsteady gait, and positive Rhomberg. (Tr. 467). Hydrocodone was changed to Oxycodone, and other medications were continued. (Tr. 468). On July 20, 2016, Dehart complained of pain and sciatica. (Tr. 463). On examination, findings were the same as in June. (Tr. 464-65). One syringe of Evzio was prescribed for as needed use, and Dehart's other medications were continued. (Tr. 465).

The ALJ found the following severe impairments: bipolar disorder; degenerative disc disease, cervical spine; degenerative disc disease, lumbosacral spine; and depression. (Tr. 17). The ALJ also found that Dehart's impairments or combination of impairments do not equal the severity of one of those listed in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 416.920(d), 416.925 and 416.926) (Tr. 18-19). Here, substantial evidence supports the ALJ's finding at steps two and three. Dehart does not contest the finding for step two and step three.

### F. Diagnosis and Opinions of Treating and Examining Physicians

A consultative examination conducted by Dr. Kim in March 2015, shows that Dehart complained of lower back pain with sciatica, cervicalgia, foot sprain, hypertension, adjustment disorder with mixed anxiety and depressed mood, and multilevel failed back syndrome. (Tr. 21, Ex. 11F at 50.). Dr. Kim opined that Dehart had lumbosacral facet athropathy, spinal instabilities of lumbosacral region, and lumbosacral disc herniation. *Id.*

At request of the State Agency, Dr. Bhupatrai G. Vachhani reviewed Dehart's medical records on June 3, 2015. (Tr. 21, Ex. 5F). In Dr. Vachhani's opinion, Dehart was able to sit, stand, move about, carry five pounds of weight, handle objects, hear and speak. She could walk on her heels and toes, squat down halfway, and she could hop while holding onto the table. (Tr. 21).

In a physical assessment dated June 21, 2017, Dr. Kim opined that Ms. Dehart was limited to two hours total sitting and two hours standing/walking during an 8-hour workday. (Tr. 21, Ex. 14F). Dehart could lift/carry up to less than ten pounds occasionally, and she had significant manipulative limitations. (Tr. 21). The symptoms were severe enough to interfere constantly with the attention and concentration required to perform simple work-related tasks. Dr. Kim also indicated Ms. Dehart would need unscheduled breaks. Recumbent rest in excess of typical employer-authorized breaks during the workday, and she would likely be absent from work more than four times a month. (Tr. 21).

Dehart has a history of mental difficulties, which she sought treatment for. On April 6, 2015, Dehart's mental status exam revealed cooperative behavior, full orientation, stable mood, logical thought process, good insight and judgment. (Tr. 21). Dr. Michael J. Barber continued the bipolar diagnosis. (Tr. 21, Ex. 3F, 4F at 11-12).

Dr. Kim provided a mental capacity assessment on February 18, 2016 and he opined that Dehart had moderate limitations in understanding and memory, slight to moderate limitations in sustained concentration and persistence, and moderate limitations in social interaction. (Tr. 22, Ex. 7 at 4).

After a review of the entire record, the ALJ found that Dehart has the RFC to

> perform light work as defined in 20 CFR 416.967(b), except she can lift/carry/push/pull 20 pounds, occasionally and 10 pounds, frequently; sit, stand, or walk with normal breaks for a total of 6 hours a day, each intermittently. The claimant can occasionally crouch, crawl, kneel, stoop, balance, climb stairs/ramps, but never used scaffolding, ropes, and ladders. The claimant requires a sit/stand option every 30 minutes, and a job in which no driving is required of job functions. The claimant must avoid even moderate exposure to extreme cold, humidity, vibration, dangerous machinery, and unprotected heights. Due to moderate limitations in concentration, persistence or pace, the claimant is limited to performing simple, routine, repetitive work with up to one, two, or three step instructions in an environment requiring few decisions.

(Tr. 19-20).

Dehart argues that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ failed to follow the treating physician rule by giving more weight to the state agency medical consultant than Dr. Kim. The examining physician's opinion is generally given more weight than that of the non-examining physician and should be given great weight in a disability determination. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). A treating physician's opinion "on the nature and severity of a patient's impairment will be given controlling weight if is . . . not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455 (internal quotations omitted). Six factors must be weighed before ALJ determines the treating physician's opinion is not entitled to controlling weight. "Specifically, this regulation requires consideration of: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature

12

and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician. *Id.* at 467; *see* 20 C.F.R. 404.1527(d)(2). An opinion is not entitled to controlling weight if it is inconsistent with other substantial evidence in the record. *Id.* at 456. However, treating source medical opinions are "still entitled to deference and must be weighed using all factors provided in 20. C.F.R. 404.1527 and 416.927." *Id.* The opinions may be assigned little or no weight when good cause is shown. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The Fifth Circuit court has held that "[p]rocedural perfection in administrative proceedings is not required, and a court will not vacate a judgment unless the substantial rights of a party are affected." *Makara S. M. Berryhill*, No. 3:18-CV-00219-BH, 2019 WL 1356602, at *12 (N.D. Tex. Mar. 26, 2019). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Frank v. Barnhart*, 326 F. 3d 618, 622 (5th Cir. 2003). To establish that this error warrants remand, Dehart must show that the opinion evidence might have rendered a different decision if it had been properly considered. Here, the ALJ considered the opinion of Dr. Kim, but gave it little weight because medical statements were contradictory with Dehart's self-report of her activities and daily living. Specifically, the ALJ determined that the claimant's statements concerning "intensity, persistence, and limiting effects were not entirely consistent with the medical evidence." (Tr. 22). The ALJ discounted Dr. Kim's mental health limitation because his expertise is in pain management, not mental health. (Tr. 23). The ALJ did not have to perform a detailed analysis of the factors set forth in 20 C.F.R. 416. 927(c) because she did not outright reject Dr. Kim's opinion, rather, gave the opinion less weight. Moreover, even if Dr. Kim's opinion was given

more weight, it is not likely it would have affected the RFC and in turn affect the jobs available under step 5. The ALJ properly discussed the weight accorded to the medical opinions. Because Dehart is unable to show that the opinion evidence might have rendered a different decision if it had been properly considered, there is no harmful error. Here, the ALJ properly considered the medical opinion evidence. This factor weighs in support of the ALJ's decision.

### G. Claimant's Subjective Evidence of Pain and Disability

The next element weighed by the ALJ is the claimant's subjective opinion regarding pain and intensity of their impairments. Pursuant to the code,

> [s]tatements about [the claimant's pain or other symptoms will not alone establish that [they] are disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to product the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

20 C.F.R. § 416.929(a). Not all pain is disabling, only when the pain is "constant, unremitting, and wholly unresponsive to therapeutic treatment" will it be considered disabling. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1985). The task to evaluate the evidence concerning subjective symptoms is reserved for the ALJ who has an opportunity to observe the claimant. *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

Dehart testified at the ALJ hearing that she has been using a walker for two years because she loses her balance and feels her legs are going out from under her. (Tr. 39). Dehart further stated that she is unable to stay on her feet long because she loses her balance and it is difficult for her to bend. (Tr. 42). In regard to her capabilities, Dehart testified she is able to lift five to ten pounds comfortably and can only stand for about twenty to thirty minutes at a time. (Tr. 43). She also testified that she is able to sit for only about twenty minutes due to her back pain. (Tr. 44).

When questioned about her everyday activities, Dehart replied that it is difficult for her to get dressed almost on a daily basis. (Tr. 45). She stated that almost fifteen days out of the month, her pain is bad to the point where she is unable to do chores around the house. (Tr. 45). Dehart also suffers from a bipolar disorder and depression. (Tr. 47). She stated that these disorders make her sad, especially around the holidays. (Tr. 48).

In Dehart's function report dated October 2015, she stated that she suffers from depression and bipolar disorders. It is hard for her to concentrate and she has problems walking and standing due to her lower back pain. (Tr. 261). She also reported that she has a bulging disc, muscle spasms, and swollen and tender ligaments in her left foot since about January 2014. (Tr. at 261). Dehart is able to dress herself and feed herself, but needs help getting dressed as well as caring for her hair. (Tr. 262). She also reported that she is able to do laundry, make the bed, and sweep the floor. (Tr. 263).

The ALJ found that Dehart's statements concerning intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the other evidence. (Tr. 22). Here, the ALJ appropriately considered the subjective evidence of pain and disability.

### H. Claimant's Age, Education, and Work History

The ALJ questioned vocational expert, Vickie Colenburg. A vocational experts testimony constitutes substantial evidence when based on a properly phrased hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical is sufficient when it reasonably incorporates all impairments that the ALJ determines are supported by the whole record. *Travis v. Berryhill*, No. H-15-3399, 2019 WL 1205161, at *9 (S.D. TX., Mar. 14, 2019).

The ALJ posed various hypotheticals to the vocational expert. (Tr. 55-58). Dehart's attorney also questioned the vocational expert. (Tr. 59). The hypothetical questions posed by the ALJ include:

> Q: Assume with me that we have a person closely approaching advanced age and I'm using the liberal application of the grid rules. With an advanced education and past work experience as you've identified. Assume that the person is capable of performing the exertional demands of a limited range of light work as defined by the Social Security Regulations. Assume that the person could lift, carry, push, and pull no more than 20 pounds occasionally, ten pounds frequently, and could sit, stand, or walk for a total of six hours a day each intermittently throughout the eight-hour workday. However, the hypothetical person would need a sit/stand option every 30 minutes and would be limited to occasional crouching, crawling, kneeling, stooping, balancing, climbing of stairs or ramps, and should have no job requiring the use of scaffolding, ropes, or ladders. The hypothetical person should avoid even moderate exposure to environments with extreme cold, humidity, and vibration, and should avoid hazardous work environments involving use of dangerous machinery, or exposure to unprotected heights due to chronic use of narcotic pain medication and limitations, moderate limitations, and concentration, persistence, and pace. The hypothetical person would be limited to performing simple, routine, repetitious work with one, two, and three step instructions in an environment requiring few decisions. And also, there should be no driving for part of the job functions. With these limitations, could such a person be able to do any of the past relevant work?
>
> A: No, Your Honor.
>
> Q: And you said there were no jobs utilizing the transferable skills, correct?
>
> A: Correct.
>
> Q: Would there by any jobs that you could identify at the light unskilled level that a person with these restrictions could do?
>
> A: Yes, ma'am. Office Helper, 239 –
>
> A: –567-010. Over 6,000 in the State. Over 6,000 in the State. Over 150,000 nationally. Mail Clerk, non-postal, 209.687-026. Over 6,000 in the State. Over 115,000 nationally. And Ticket Seller, 211.467-030. Over 4,000 in the State. Over 75,000 nationally. These are light, unskilled, SVP 2.
>
> Q: Okay. Does the DOT allow for the sit/stand option?
>
> A: It doesn't describe it, Your Honor.

> Q: Okay. Is the information related to these job and the sit/stand option every 30 minutes, is that based on your experience and evaluating and placing people in jobs?
>
> A: Yes, ma'am.

(Tr. 55-58). The record show's Dehart's Attorney asked the vocational expert questions:

> Q: Let's assume that in addition to the Judge's hypothetical this person would miss more than four days of work a month on a consistent basis. Are there any jobs that exist in the national or regional economy?
>
> A: No, sir. It's my belief that a person would not be able to maintain competitive employment.
>
> Q: Okay. And then in the same, if an individual would only be able to sit for two hours during the day, stand and walk for two hours each during an eight-hour workday, lift up to ten pounds occasionally, would this individual be able to do any work that exists in the national or regional economy?
>
> A: No, sir.
>
> Q: And then circling back to the Judge's hypothetical, if we were to change the sit/stand option to at-will and add that the person would have to use a walker when ambulating or standing, would there by any light level jobs that exist with these restrictions?
>
> A. Not in my opinion. No, sir.

(Tr. 58).

Under the SSR 00-4p, adjudicators must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles." SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). While an ALJ must ask if the testimony conflicted with the DOT, the failure to do so is "harmless unless there was actual conflict." *Graves v. Colvin*, 837 F.3d 589, 593 n.2 (5th Cir. 2016). Where "substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p, 2000 SSR LEXIS 8 is harmless, [the] court will not

reserve the ALJ's decision." *Id.* (internal quotations omitted). In order to warrant reversal, the claimant must how that she was prejudiced "by the ALJ's failure to fully and fairly develop the record." *Id.* at 593. "[E]rrors are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). Harmless error exists when "it is inconceivable that a different administrative conclusion would have been reached absent the error." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). A plaintiff must show that the VE's testimony was "actually inconsistent with the DOT." *See Graves*, 837 F.3d at 592-93.

Dehart alleges that the ALJ's Step 5 determination is not supported by substantial evidence because the VE's testimony conflicts with the Dictionary of Occupational Titles and that the ALJ violated the SSR 00-4p because she did not identify the conflict or obtain an explanation of the conflict from the VE. (Document No. 16 at 1). The VE reported these jobs as being light, unskilled, SVP 2. (Tr. 57). The ALJ did not ask the VE if her testimony was consistent with the DOT.

Dehart argues that an office helpers' duties are not repetitious in nature and therefore conflicts with Dehart's capabilities. Dehart also argues that the jobs of mail clerk and ticket seller require a reasoning level of 3, which is not consistent with the ALJ's RFC because the ALJ limited Dehart's work up to three step instructions. Dehart further asserts that the error was prejudicial because the claimant was precluded from their performance, which renders the ALJ's denial of benefits unsupported by substantial evidence. (Document No. 16 at 18). The failure to ask whether the VE's testimony was consisted or conflicted with the DOT is error. *See Graves*, 837 F.3d at 592. However, the error is harmless, unless there was actual conflict. *Id.* at 593 n.2. Here although the claimant alleges a slight inconsistency, she has failed to show that it would

have resulted in a different decision. *See Id.* at 592-93. A claimant "establishes the requisite prejudice by showing that, if the ALJ had fully developed the record, additional evidence would have been produced that might have led to a different decision." *Raymond Earl Edmond v. Nancy Berryhill*, No. 3:18-CV-0677, 2019 WL 1424612, at *14 (N.D. Tex., Mar. 29, 2019); see *Newton*, 209 F.3d at 458 (emphasis added) (internal quotations omitted). A "mere allegation that additional evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones v. Astrue*, 691 F. 3d 730, 734-35 (5th Cir. 2012). The ALJ did err when she failed to ask whether the VE's testimony was consistent with the DOT. However, this error was not harmful and therefore does not warrant remand. The ALJ's finding is supported by substantial evidence and should be affirmed.

We conclude that the ALJ did not legally err regarding Dr. Kim's opinion evidence when determining the RFC. The hypotheticals are properly phrased and take into account opinion evidence. This factor weighs in favor of the ALJ's decision.

**CONCLUSION**

Based on the foregoing reasons, the opinion of the physician, Dr. Kim, was properly considered and the ALJ's RFC is supported by substantial evidence. The failure of the ALJ to ask the VE whether the testimony was consistent with the DOT was error, but this error was not harmful. As such, it is ORDERED that the Defendant's Motion for Summary Judgment (Document No. 13) is GRANTED and the Plaintiff's Motion for Summary Judgment is DENIED (Document No. 15).

Signed at Houston, Texas this 29th day of October, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE